UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Michael T. Stephens, #68665 | ) | C/A No.: 4:08-00329-CMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Gary Kubic; Phillip A. Foot; | ) | |
| Charlers Allen; Jo Ann DeBoe; | ) | |
| Dr. Charlers Buch; Nurse Holden; | ) | |
| Nurse Carlise; Susan Foot; Parole | ) | |
| Agent Rowell; Southern Health | ) | |
| Partners, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**I. PROCEDURAL BACKGROUND**

The plaintiff, Michael T. Stephens, filed this action under 42 U.S.C. § 1983[1] on February 4, 2008, alleging violations of his constitutional rights. During the time of the matters alleged in his complaint, plaintiff was housed at the Beaufort County Detention Center (BCDC) as a pretrial detainee. On June 6, 2008, defendants DeBoe, Dr. Bush, Nurse Holden, Nurse Carlisle, and Southern Health Partners, Inc. ("defendants") filed a motion for summary judgment along with a memorandum, exhibits, and affidavits in support of said motion. (Document #35).[2] Because plaintiff is proceeding pro se, he was advised on or about June 13, 2008, pursuant to

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] As to plaintiff's allegations against defendants Phillip Foot, Parole Agent Rowell, Susan Foot, Kubic, and Allen, a separate report and recommendation will be entered. These defendants filed a motion for summary judgment on September 25, 2008, to which plaintiff has not filed a response as of this date.

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint. The plaintiff filed a response on July 16, 2008. (Doc. # 38).[3]

## II. DISCUSSION
### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

Plaintiff alleges that he was denied adequate medical attention while a pretrial detainee at the BCDC. Specifically, plaintiff alleges as follows, quoted verbatim, in part:

> On September 11, 2007, plaintiff was in a very bad vehicle accident. I was airlifted to Palmetto Richland Hospital in Columbia, South Carolina. I was rushed to the trauma unit for surgery. The Dr. at the hospital diagnosis me with (1) a broken clavica, (2) fracture neck, (3) puncture lung, (4) three broken ribs. Upon my release from the hospital, I was prescribed several pain medications. I also had several doctor appointment in Columbia, South Carolina, to see a specialist surgeon, which I was unable to keep my appointments, because on October 19, 2007, I was arrested at my parole agent, office, for failing to report. On the same day my parole agent transferred me to the Beaufort County Detention Center. Upon classification, I informed nurse Holden and supervises, nurse Jo Ann DeBoe, of my medical condition, as well as my need to see the doctor, as soon as possible because of my medical needs. I also asked about my pain medication, and was told that I could not have my prescribed medication by nurse DeBoe, and by nurse Holden. I then asked nurse holden, could I be placed in the medical ward. Which she stated no because they only had one bed and they needed to keep that open for emergency. So I was force to sleep in a holden cell. Which later I found out wasn't true. The medical ward has five beds and two cells in it. On October 20, 2007, I sent a sick call slip to remind nurse Holden that I needed to see the Dr. her reply was we don't have an orthopedic Dr. but if you would like to see a doctor it will be at your own expense. The money for the Dr. visit must be in your inmate account prior to the appointment being made. On October 23, 2007, once again I put another sick call slip and was told again

---

[3] Plaintiff is no longer incarcerated at the BCDC.

> by nurse Carlise that this issue was addressed with me the day before. And if I wanted to see a doctor I needed money in my inmate account. And was instructed by their supervises Jo Ann DeBoe, to do so. On October 25, 2007, I put in another sick call slip asking to see the doctor on call here because of the pain I was having in my chest and left side. The slightest shift causes excruciating pain, it hurts to breathe at some point at nite. Once again I was denied medical attention by the Dr. and nurses here at Beaufort County Detention Center, This is a clear case of cruel and unusual punishment. And was told this issue was addressed on October 24, 2007, and on October 23, 2007. At this point I still haven't seen a doctor. So I sent a request to Deputy Director Charles Allen, requesting medical attention from the medical staff here, deputy Allen, response to my request was he's no doctor, and I need to be sending my request to the medical staff not him. On October 28, 2007, I filed a inmate grievance form. So on October 29, 2007 at 9:00 am c/o Gilliam came to my cell and stated that I was wanted at medical.
>
> Upon arriving at medical Supervisor nurse Jo Ann DeBoe explain to me once again that they address my situation, and the only other means for me to see a Dr. was to have my family put one hundred dollar's in my inmate account to pay for my Dr. visit here in Beaufort County that's my only choice of seeing a doctor. At that time I asked nurse Jo Ann DeBoe isn't it Beaufort County responsibility to provide indigent inmate's with proper medical treatmented. So on the same day, October 29, 2007 on or about three thirty pm a Sgt. Harris came to my cell and told me I was needed at medical to see nurse DeBoe and Dr. Bush. Once again nurse DeBoe and Dr. Bush stated I needed money in my inmate account to see a Dr. here in Beaufort County. . . .

(Complaint).

Plaintiff continues to allege that he was told by medical that he would have to have money in his inmate account to see an outside doctor. Plaintiff asserts he was subjected to abuse, harassment, abridgement of his civil rights and denied privileges. Plaintiff alleges that defendants acted in bad faith by abusing their authority and refusing him medical treatment. Plaintiff alleges that since the date of his confinement, October 19, 2007, "he has not seen a doctor or had any medical treatment" and he is "still having excruciating pain in his chest and

neck." (Complaint). Plaintiff further argues that he has been denied parole on four separate occasions and that defendants refused to appoint him counsel. (Complaint). Plaintiff seeks actual damages in the amount of three hundred thousand dollars and punitive damages in the amount of ten million dollars.

Defendants filed an answer asserting that at no time did anyone at the medical staff exhibit medical indifference, failure to exhaust administrative remedies, failure to allege deliberate indifference or failure to state a claim. Defendants filed a motion for summary judgment asserting that the complaint is "devoid of any specific mention of a time when he was denied medication or treatment in an emergency situation. His complaints of toothache, athletes foot, chest pain and injuries received in the auto accident were all addressed. The chest pain of which he complained, he was seen for on numerous occasions beginning on the 30th of January, 2008, which was the first time he complained of chest pain." (Memorandum, p. 5-6).

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the

pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt

5

>   in accordance with the due process of law. Where the State seeks
>   to impose punishment without such an adjudication, the pertinent
>   constitutional guarantee is the Due Process Clause of the
>   Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538. [4]

### D. MEDICAL INDIFFERENCE

As previously discussed, plaintiff alleges that defendants were deliberately indifferent to his medical needs by denying him treatment. Plaintiff filed a response and affidavit to the motion for summary judgment asserting as follows:

>   Plaintiff had been in a very bad vehicle accident, involving with a Eighteen Wheeler, on September 11, 2007.
>
>   As a result of the accident Plaintiff was air lifted to Palmetto Richland Hospital, in Columbia South Carolina. Upon arriving at the hospital by helicopter, plaintiff was rushed to the trauma unit for surgery.

---

[4] The Court notes that in 42 U.S.C. § 1983 actions, the Fourth Circuit has held that the deliberate indifference standard is the same for both inmates and pretrial detainees. *Patten v. Nichols*, 274 F.3d 829, 834-35 (4th Cir. 2001);

>Plaintiff's injuries from the accident, were a broken Clavicle, fractured neck, broken ribs, and Punctured Lung.
>
>Prior to being discharged from the hospital, Plaintiff called the Parole Office to explain the circumstances for not being able to report.
>
>Plaintiff, spoke with a Ms. Donnelly, from the Parole Office, and she instructed Plaintiff to report the week of October 19, 2007. Because Plaintiff's Parole agent was out on Medical leave, Plaintiff reported to the Parole office on October 19, 2007, and was arrested for failure to report. . . .
>
>The plaintiff's records show no action taken toward any of the ailments he complained about at intake, he was simply left to suffer because he could not afford to pay for treatment. Which in turn should not have prevented him from being treated.
>
>The Defendants have not provided any records of treatment the Plaintiff received, medication provide or follow-up care. They simply say that the Plaintiff was treated, Nothing in the Plaintiff's records support this. . . .
>
>Plaintiff's complaint was prison officials did not provide him adequate facilities and equipment for necessary medical care for his serious medical needs.

(Response).

>In his affidavit, plaintiff asserts the following:
>
>That plaintiff has NEVER been treated or examined for his injuries by anyone from the medical staff at the Beaufort County Detention Center, whereas, they were deliberately indifferent to plaintiff's serious medical needs. Plaintiff's B.C.D.C. medical records will clearly reflect that No One from the B.C.D.C. has ever treated or examined plaintiff for his injuries and serious medical needs.
>
>That the defendant Charles A. Bush, M.D., had made a statement alleging that he had seen plaintiff on an occasion for medical care and/or treatment, in concern for plaintiff's serious medical needs. However, contrary to defendant's belief, notwithstanding the fact that plaintiff had been seen by defendant Charles A. Bush, plaintiff contends that he has Never been treated or examined for his serious medical needs. Most importantly, in defendant's affidavit he fails to specify exactly what medical care and treatment was provided to plaintiff. Furthermore, a review of plaintiff's B.C.D.C. medical records will substantiate plaintiff's contention regarding him never being treated for his injuries at the B.C.D.C.

> That Plaintiff had seen defendant Joe Ann Deboe on two occasions and was told, on both occasions that the only way he would be treated for his serious medical needs is if he have his family send him funds to his inmate account prior to the B.C.D.C. making any doctor appointment. . . .
>
> That defendants was deliberately indifferent by preventing plaintiff from receiving treatment that was proscribed and diagnosed by plaintiff's physician, and denying him access to be examined, evaluated and treated by professional licensed medical personnel or anyone capable of providing sufficient treatment to plaintiff for his serious medical injuries, because plaintiff was indigent. [sic].

(Plaintiff's affidavit, doc. #38-4).

Defendants submitted the affidavits of Dr. Charles A. Bush ("Bush" or "Dr. Bush") and Joe Ann DeBoe, L.P.N. ("DeBoe"). Dr. Bush attests that he has been practicing medicine and surgery for the past thirty (30) years and is a contract employee of Southern Health Partners, Inc., which holds a contract to provide medical care providers to the Beaufort County Detention Center ("BCDC"). Bush is the Medical Director and Joe Ann DeBoe is the Administrator and charge Nurse at the BCDC. (See affidavits, Docs. #35-2 and 35-3). Dr. Bush attests that he is familiar with plaintiff and has seen him on occasion for medical care and/or treatment. Bush asserts that he reviewed plaintiff's charge and states that "without hesitation that the medical care and treatment provided for him was always within the standard of care and met the needs of the Plaintiff. That at no time did he or any member of his staff ever deliberately withhold medical care tor treatment from Plaintiff. . . " (Bush Affidavit). Bush attests that the allegation by plaintiff that he was not seen upon entry into the Detention Center for injuries he received in an automobile accident the month prior to his incarceration are untrue. Bush attests that it is a rule and policy that all inmates be seen and examined within fourteen days of their entrance and that plaintiff's medical records reveal he entered the BCDC on October 19, 2007, and was seen by Dr. Bush on October 29, 2007, ten days after his entry into the BCDC. (Bush affidavit). Dr.

8

Bush asserts that plaintiff was seen on various occasions by Nurse DeBoe, Nurse Carlise, and Nurse Holden as reflected in the medical records attached to defendants' answer as Exhibit A. (Bush affidavit, doc. #35-2).

Joe Ann DeBoe attests that she is a Licensed Practical Nurse working at the BCDC and employed for approximately four years by Southern Health Partners, which provides healthcare employees for detention centers similar to that of the BCDC. DeBoe asserts that she is the Nursing Administrator for BCDC and is supervised by Charles A. Bush, the Medical Director for BCDC. DeBoe states that she is thoroughly familiar with plaintiff having seen him on numerous occasions for various alleged medical reasons during the time he was incarcerated in the BCDC. DeBoe attests that plaintiff entered the BCDC on October 19, 2008, and prior to that, he had been in an automobile accident in September and received ceratin injuries for which he was treated at Palmetto Health Hospital in Columbia, South Carolina.  On the day of his entrance into the BCDC, plaintiff requested that he be able to see a doctor for the injuries he received in the automobile collision and was seen three days later by Nurse Holden, an employee of Southern Health Partners, who stated that "[t]his condition has been ongoing since September 7, (prior to incarceration). BCDC does not have an orthopaedic doctor, but if you would like to see your doctor, it would be at your own expense. The money for the visit must be in your account prior to the appointment being made." (DeBoe affidavit). DeBoe attests that plaintiff never provided the money necessary to see an orthopedist. DeBoe attests that the medical records reveal that an orthopedic consult was ordered by Dr. Bush with a proviso that plaintiff make arrangements to pay for the visit. On January 10, 2008, DeBoe asserts that plaintiff complained of problems with a tooth that was keeping him awake at night. A notation in the medical chart reveals that arrangements were made for plaintiff to see a dentist, but plaintiff refused to be seen. (DeBoe

9

affidavit, ¶ 11). DeBoe attests that the medical records reflect plaintiff receive the care available to him in the BCDC and that she and her nurses were within the standards and limitations of nursing within such facilities as the BCDC institution.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or

10

> omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's

11

decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has alleged that he suffered serious injuries in an accident on September 11, 2007, including a broken clavicle, fractured neck, broken ribs, and punctured lung. Plaintiff was arrested on October 19, 2007, when he reported to his parole office. Defendants have not denied that plaintiff had sustained said injuries.[5] Defendants assert that Dr. Bush ordered an orthopaedic

---

[5] It is noted in the remaining defendants' memorandum and affidavits in support of summary judgment (doc. # 44), defendants stated that "Agent Rowell met Mr. Stephens and observed that he had significant injuries; he was in a back support brace and his arm was in a sling. Based on prior experience with the Beaufort County Detention Center, Agent Rowell knew that Stephen's medical condition might require evaluation from another medical provider before the Detention Center accepted him. Agent Rowell called the BCDC by telephone, spoke

consult if plaintiff made arrangements to pay for the visit. Therefore, Dr. Bush must have deemed plaintiff's injuries needed to be followed up by an orthopaedist. Dr. Bush and Nurse DeBoe stated in their affidavits that plaintiff was seen by Dr. Bush on October 29, 2007. A review of the medical records submitted for that date reveals that Dr. Bush did see plaintiff due to complaints of chest pain and the treatment plan was to try Tums from the canteen and not to lay down for one hour after eating. Other than this one record, defendants have not provided or alleged that Dr. Bush examined or treated plaintiff for the injuries he sustained from the automobile accident. Further, Nurse DeBoe stated in her affidavit that plaintiff requested to see a doctor for his injuries received in the automobile collision on the day after his entrance into the BCDC. DeBoe attests that plaintiff was informed that the BCDC did not have an orthopaedic doctor and if he wanted to see his own doctor he would have to have the money in his inmate account prior to the appointment being made. DeBoe asserts that plaintiff was informed on numerous occasions that he had to have money in his inmate account prior to any appointments being scheduled. (See DeBoe affidavit). While DeBoe asserts that plaintiff was seen by medical on numerous occasions, she does not state or provide evidence that plaintiff was ever examined or provided any treatment for the serious injuries he sustained in the automobile accident that occurred a little over one month prior to being incarcerated. See Brown v. Lamanna, Case No. 08-6840 (4th Cir. December 29, 2008) (Unpublished) citing Brice v. Virgina Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (noting that official cannot hide behind an excuse that he was unaware of a risk, if the risk was obvious and that official is charged with confirming inferences

---

with nursing, described the injuries and received approval for Mr. Stephens' acceptance into the jail. . . .Agent Rowell informed the Plaintiff while at booking [at the BCDC] that if he needed medication or treatment for his injuries he would have access to medical care."

he strongly suspects exist); McElligott v. Flowy, 182 F.3d 1248, 1258 (11th Cir. 1999) (holding that jury could find deliberate indifference where prison staff failed to respond to deteriorating condition). In this case, defendants have not shown or alleged that they investigated his condition to determine the extent of his injuries due to the pain he was alleging. Plaintiff asserts that he had prescribed pain medication that defendants would not allow him to have causing him to suffer with suffer pain and that he was not allowed follow-up care with his doctors from the injuries he had had surgery for and had received in the accident. Plaintiff also asserts that he suffered with pain for months from a toothache and was not allowed to see a dentist due to being indigent and not having the funds in his inmate account. Plaintiff does not assert that he was not seen in medical on numerous occasions regarding his injuries and pain but asserts he was never treated or examined but told each time that he needed to have money in his inmate account prior to being seen by an outside orthopaedic leaving him to continue to suffer with pain from his injuries.

Defendants have not met their burden to show that they examined plaintiff, examined his need for follow-up treatment, or obtained records regarding his injuries.[6] The intake or booking form reveals a picture of plaintiff in a neck brace and sling. Even though the Constitution does not guarantee that a prisoner the treatment of his choice, it does require that prisoners be provided with a certain minimum level of medical treatment. Jackson v. Fair, 846 F.2d 811 , 817 (1st Cir. 1988); Brown v. Thompson, 868 F. Supp. 326, 329-330, n. 2 (s.D. Ga. 1994); Poe v. Ozmint, 2006 WL 3489110 (D.S.C. 2006).

---

[6] Defendants provided conclusory statements that plaintiff was treated in the affidavits and memorandum submitted.

Based on the evidence presented, defendants have failed to show that there is not a material issue of fact with regard to medical indifference.[7] Therefore, it is recommended that summary judgment be denied as to these defendants.[8]

### III. CONCLUSION

Based on the reasons stated above, it is **RECOMMENDED** that the motion filed by defendants DeBoe, Bush, Holden, Carlise, and Southern Health Partners, Inc., for summary judgment (document #35) be **DENIED.**

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 5, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[7] Defendants have failed to show that plaintiff failed to exhaust his administrative remedies.

[8] As plaintiff is no longer housed at the BCDC, any claims for injunctive and/or declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).