UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Michael T. Stephens, #68665 | ) | C/A No.: 4:08-00329-CMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Gary Kubic; Phillip A. Foot; | ) | |
| Charles Allen; Susan Foot; Parole | ) | |
| Agent Rowell; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Michael T. Stephens, filed this action under 42 U.S.C. § 1983[1] on February 4, 2008, alleging violations of his constitutional rights. During the time of the matters alleged in his complaint, plaintiff was housed at the Beaufort County Detention Center (BCDC) as a pretrial detainee. On June 6, 2008, defendants DeBoe, Dr. Bush, Nurse Holden, Nurse Carlisle, and Southern Health Partners, Inc. ("defendants") filed a motion for summary judgment along with a memorandum, exhibits, and affidavits in support of said motion. (Document #35). The Honorable Cameron McGowan Currie issued an Order on February 20, 2009, granting their motion for summary judgment concluding that these defendants were not deliberately indifferent to plaintiff's serious medical needs, "as he was evaluated upon intake and seen and evaluated relating to his injuries ten days after his admission to BCDC." (See Order, doc.#70).

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

Defendants Gary Kubic, Phillip A. Foot, Charles Allen, Suezanne Foot and Patrick Rowell ("defendants") filed a motion for summary judgment on September 25, 2008. Because plaintiff is proceeding pro se, he was advised on or about September 26, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint. The plaintiff filed a response on March 9, 2009. (Doc. # 73).[2]

## II. DISCUSSION
### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

Plaintiff alleges that he was denied adequate medical attention while a pretrial detainee at the BCDC. Specifically, plaintiff alleges as follows, quoted verbatim, in part:

> On September 11, 2007, plaintiff was in a very bad vehicle accident. I was airlifted to Palmetto Richland Hospital in Columbia, South Carolina. I was rushed to the trauma unit for surgery. The Dr. at the hospital diagnosis me with (1) a broken clavica, (2) fracture neck, (3) puncture lung, (4) three broken ribs. Upon my release from the hospital, I was prescribed several pain medications. I also had several doctor appointment in Columbia, South Carolina, to see a specialist surgeon, which I was unable to keep my appointments, because on October 19, 2007, I was arrested at my parole agent, office, for failing to report. On the same day my parole agent transferred me to the Beaufort County Detention Center. Upon classification, I informed nurse Holden and supervises, nurse Jo Ann DeBoe, of my medical condition, as well as my need to see the doctor, as soon as possible because of my medical needs. I also asked about my pain medication, and was told that I could not have my prescribed medication by nurse DeBoe, and by nurse Holden. I then asked nurse holden, could I be placed in the medical ward. Which she stated no because they only had one bed and they needed to keep that open for emergency. So I was force to sleep in a holden cell. Which later I found out wasn't true. The medical ward has five beds and two cells in it. On

---

[2] Plaintiff is no longer incarcerated at the BCDC.

2

October 20, 2007, I sent a sick call slip to remind nurse Holden that I needed to see the Dr. her reply was we don't have an orthopedic Dr. but if you would like to see a doctor it will be at your own expense. The money for the Dr. visit must be in your inmate account prior to the appointment being made. On October 23, 2007, once again I put another sick call slip and was told again by nurse Carlise that this issue was addressed with me the day before. And if I wanted to see a doctor I needed money in my inmate account. And was instructed by their supervises Jo Ann DeBoe, to do so. On October 25, 2007, I put in another sick call slip asking to see the doctor on call here because of the pain I was having in my chest and left side. The slightest shift causes excruciating pain, it hurts to breathe at some point at nite. Once again I was denied medical attention by the Dr. and nurses here at Beaufort County Detention Center, This is a clear case of cruel and unusual punishment. And was told this issue was addressed on October 24, 2007, and on October 23, 2007. At this point I still haven't seen a doctor. So I sent a request to Deputy Director Charles Allen, requesting medical attention from the medical staff here, deputy Allen, response to my request was he's no doctor, and I need to be sending my request to the medical staff not him. On October 28, 2007, I filed a inmate grievance form. So on October 29, 2007 at 9:00 am c/o Gilliam came to my cell and stated that I was wanted at medical.

Upon arriving at medical Supervisor nurse Jo Ann DeBoe explain to me once again that they address my situation, and the only other means for me to see a Dr. was to have my family put one hundred dollar's in my inmate account to pay for my Dr. visit here in Beaufort County that's my only choice of seeing a doctor. At that time I asked nurse Jo Ann DeBoe isn't it Beaufort County responsibility to provide indigent inmate's with proper medical treatmented. So on the same day, October 29, 2007 on or about three thirty pm a Sgt. Harris came to my cell and told me I was needed at medical to see nurse DeBoe and Dr. Bush. Once again nurse DeBoe and Dr. Bush stated I needed money in my inmate account to see a Dr. here in Beaufort County. . . .

On Nov. 3, 2007, my grievance came back from deputy Allen denied. So on the same day Nov. 3, 2007 I appeal to director Philip A. Foot, so on or about Nov. 7, 2007 director Foot instructed deputy Allen to see if my family was going to have money put in my account to pay for the Dr. Visited. The Beaufort County Detention Center and the administration as well as the medical staff here did not acted in their professional duties and proceed in a manner calculated to achieve a fair and expeditious resolution of

> this matter. . . . Parole Agent Rowell knew that plaintiff would not be able to get the medical treatment and attention he needed before agent Rowell transferred plaintiff to Beaufort county Detention Center. Agent Rowell and agent Ms. Foot knew that B.C.D.C. wouldn't administer Plaintiff h[i]s prescribed medication. Agent Rowell called and talked to supervises nurse Jo Ann Deboe about plaintiff situation. Parolee has been refused on four seperated occasion. . .

(Complaint).

Plaintiff alleges that the parole agents did not act within their professional duties when he was not appointed counsel. Plaintiff alleges he was subjected to abuse, harassment, abridgement of his civil rights and denied privileges. Plaintiff alleges that defendants acted in bad faith by abusing their authority and refusing him medical treatment. Plaintiff further argues that he has been denied parole on four separate occasions and that defendants refused to appoint him counsel. (Complaint). Plaintiff seeks actual damages in the amount of three hundred thousand dollars and punitive damages in the amount of ten million dollars.

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be

granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not

5

acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538. [3]

### D. DEFENDANT KUBIC

Defendants argue that plaintiff fails to state a cause of action against Gary Kubic in that he was listed in the caption, but not mentioned in the complaint. Further, defendants argue that the doctrine of respondeat superior does not generally apply to §1983 suits.

As the complaint is silent as to Gary Kubic, it is recommended that summary judgment be granted as to this defendant.[4]

---

[3] The Court notes that in 42 U.S.C. § 1983 actions, the Fourth Circuit has held that the deliberate indifference standard is the same for both inmates and pretrial detainees. *Patten v. Nichols*, 274 F.3d 829, 834-35 (4th Cir. 2001);

[4] Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v.

### E.  MEDICAL INDIFFERENCE

The allegations against defendant Philip Foot and Charles Allen are that they in effect denied his request to visit a physician of the plaintiff's choice by requiring that he first deposit money in his account to pay for the visit.

Defendants submitted the affidavit of Philip Foot who attests that he is the director of the BCDC and his responsibilities include maintaining complete records on the operation of the BCDC, on detention center policies and procedure, and complete records on all inmates. Foot attests that plaintiff was detained in the BCDC from October 19, 2007, until his transfer. Foot avers that Southern Health Partners provides all medical services to BCDC detainees pursuant to contract and attached a copy of said contract as exhibit 1 to his affidavit. Foot attests that plaintiff saw medical personnel for classification and for injuries suffered in an accident before his arrival at the BCDC. During his stay at the BCDC, Foot asserts that plaintiff had access to medical treatment through Southern Health Partners by completing an inmate sick call slip which he attached as Exhibit 2. Foot attests that during his stay, plaintiff submitted numerous requests for medical attention and received evaluation and treatment from Southern Health Partners. (Foot affidaivt).

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton

---

Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).  The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984). Therefore, if plaintiff was naming Kubic as he is a supervisor, the claim fails.

infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . .  We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be

intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying  Daniels vs. Williams  and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").  Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

9

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

As previously discussed, the Honorable Cameron McGowan Currie found in her order of February 20, 2009, that plaintiff was evaluated and screened by an L.P.N. upon intake into the BCDC and was seen and evaluated relating to his injuries ten days after his admission to BCDC. (See Order, Doc.#70).

Additionally, any claims of medical indifference as to these defendants should be dismissed as they are not medical personnel and plaintiff has not shown that they interfered with his medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Plaintiff has failed to show that

10

defendants deliberately interfered with plaintiff's medical treatment. Therefore, any claims against these defendants for medical indifference fail.

For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.

### F.  PROBATION, PARDON AND PAROLE SERVICES AGENTS:

Defendants submitted the affidavits of Probation, Pardon and Parole Services Agents Suezanne Foot and Rowell. (Affidavits). Agents Foot and Rowell attest that they are Probation Officers employed by the South Carolina Department of Probations, Pardon and Parole Services (DPPS). Their responsibilities include supervising the probation and parole of convicted persons released from incarceration and residing within the State of South Carolina, including maintaining complete records on all such persons. Id. When a person violates the conditions of his or her release, they have the authority to arrest that person and take the arrestee to the BCDC. Id. They attest that they know from their own personal knowledge that Southern Health Partners provides all medical services to BCDC. Id.

Agent Foot attests that on November 2, 2004, plaintiff, a Pennsylvania parolee, applied for an Interstate Compact Transfer to South Carolina, and as part of his application, he agreed to comply with all terms and conditions of his supervision imposed by the Pennsylvania Board of Probation and Parole and the South Carolina DPPS. (Foot affidavit).[5] During 2007, plaintiff was one of the persons assigned to Agent Foot for supervision of his parole, and he was given a scheduled date and time when he was required to report in person to her office, but did not

---

[5] Foot attached a copy of plaintiff's application for transfer which she is required to keep in her file.

always report when required. Id. On several occasions during his supervision when he failed to report, Agent Foot made a trip to his home to check on him and, although he was not at home, she found the neighbors to be a very reliable source of information and verified his residence. Id. The last time Agent Foot saw plaintiff was on June 18, 2007. Id. Plaintiff failed to report between June 18 and September 27, 2007. On September 27, 2007, she made a visit to plaintiff's home and, finding him absent, she inquired of the neighbors who responded that they had not seen him "in a while." Id. Therefore, on September 27, 2007, she reported plaintiff's failure to report through the DPPS Field Operations Division's Interstate Compact Services Office so they could report him to the Pennsylvania office. Id.

Agent Rowell attests that Agent Foot went out on medical leave for surgery and he assisted in the supervision of her cases during her absence. (Rowell affidavit). Rowell was aware that on October 19, 2007, the Pennsylvania Board of Probation and Parole issued a warrant for plaintiff's arrest for violation of parole and advised his office that it is a non-bailable offense.[6] On October 19, 2007, plaintiff came to the office to report to Agent Foot. Id. Rowell checked plaintiff's status on the National Crime Information Computer (NCIC) and found an active warrant for his arrest. Id. Rowell attests that he is a certified NCIC operator and that when someone is wanted, which is called a HIT, the instructions are always that the law enforcement authority must verify the warrant extradition before taking the suspect into custody. Rowell ran the NCIC wanted request and called the Pennsylvania authorities at the number on the wanted record and spoke to parole authorities who confirmed the warrant was active and that they would extradite from SC. Id. Agent Rowell met with plaintiff and observed that he had significant

---

[6] Rowell attached a copy of the facsimile transmission from the Pennsylvania Board of Probation and Parole.

injuries and was in a back support brace and his arm was in a sling. Id. Rowell contacted the BCDC by telephone and spoke with nursing describing plaintiff's injuries to get approval for plaintiff's acceptance into the BCDC in the event that nursing might direct them to another medical provider before accepting him based on prior experience. Id. Plaintiff was placed under arrest and transported to the BCDC, entered through the sally port doors to booking where he received medical attention right away from the Nursing Section. Id. Rowell told plaintiff at Booking that if he needed medication or treatment for his injuries he would have access to medical care. Id. Rowell went to Magistrate Fitzgibbons' office that same day at the BCDC to request he review the paperwork to determine if he needed a fugitive warrant. After reviewing the paperwork, Magistrate Fitzgibbons determined that plaintiff had signed a waiver of extradition and that a fugitive warrant was not necessary.[7] The Magistrate ordered plaintiff be held without bond. Id.[8]

---

[7] Rowell attached a copy of plaintiff's Application for Interstate Compact Transfer which contains the waiver of extradition.

[8] Additionally, any claim by plaintiff that these defendants are responsible for him being denied parole fails. The Constitution itself does not create a protected liberty interest in the expectation of early release on parole. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979); *see also* Jago v. Van Curen, 454 U.S. 14, 18-20 (1981)(mutually explicit understanding that inmate would be paroled does not create liberty interest). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7. "It is therefore axiomatic that because . . . prisoners have no protected liberty interest in parole they cannot mount a challenge against a state parole review procedure on procedural (or substantive) Due Process grounds." Johnson v. Rodriguez, 110 F.3d 299, 308 (5th Cir.1997). Because there is no constitutional right, federal courts "recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996); Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir.1991). The South Carolina Supreme Court has found that "[a]lthough this provision [§ 24-21-640] creates a liberty interest in parole eligibility, it does not create a liberty interest in parole." Furtick v. South Carolina Dep't of Probation, Parole & Pardon Services, 576 S.E.2d 146, 149 (S.C. 2002).

Additionally, parole agents are not responsible for appointing attorneys.

## G. ELEVENTH AMENDMENT IMMUNITY

Defendants argue that plaintiff may not sue Suezanne Foot and Patrick Rowell pursuant to 42 U.S.C. 1983 as they are state officials acting in their official capacity. Therefore, defendants contend that the Agents are entitled to Eleventh Amendment Immunity.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Court found that the Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" and that state agencies, divisions, departments and officials are "arms of the state." Will, 491 U.S. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities. The Parole Board defendants are arms of the state. Loftin v. South Carolina Probation & Parole, 2008 WL 68630 (D.S.C.2008) ( "The South Carolina Department of Probation, Parole & Pardon Services (SCDPPPS) is entitled to summary dismissal under the Eleventh Amendment, which divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral

14

parts, such as a state agency or department.") Therefore, the Parole Board defendants in their official capacities are entitled to Eleventh Amendment immunity from monetary damages.

## H.  QUALIFIED IMMUNITY

Defendants argue that although there is no allegation that the agents acted individually, each is entitled to qualified immunity should the Court interpret the complaint as brought against them individually.

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity.  That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit  stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985). In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts

16

accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendant (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must

17

be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra.  Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## I.  STATE LAW CLAIMS

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## III.  CONCLUSION

For the above reasons, it is recommended that defendants' motion for summary judgment (doc. #44) be GRANTED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 26, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

18